Bissell, P. J.
The difficulty of this case and the consideration given to: it cannot be measured by the brevity of this opinion. It is: our inclination as it is probably the inclination of all courts to afford a party who has been subjected without cause to a *40 criminal prosecution an opportunity to recover damages for the wrong. I make this statement in the face of what I believe to be the law and the necessity which exists in all republican governments to afford the citizen a reasonable opportunity to bring to justice all offenders against the general law. Under our system it is the right of every good citizen to complain to the grand jury when he believes crime has been committed, and in doing this he must be measurably and reasonably protected against suits for malicious prosecution. Notwithstanding all this a very careful examination of this record does not enable us to reverse the judgment and afford the plaintiff a chance to properly try his case.
In 1896 there was a suit between McPhee and other parties in the district court which resulted in a judgment and the taking of an appeal to this tribunal. An undertaking was given for its prosecution. This was the origin of the difficulty. Klug the appellant was offered as a surety. He signed the undertaking and justified before the clerk, whereby he swore that he was worth the sum mentioned in the undertaking and above his just debts and liabilities in property not exempt from execution. Thereunder the justification there was a memorandum signed by him reciting that -he owned 2,500 acres of land in Weld county, 500 without incumbrance, improved and of the value of $20,000; 500 head of horses, and 500 head of cattle. The prosecution against Klug was apparently based, although we are not fully advised about it by this record, upon the untruthfulness of this justification. In other words, the parties in whose favor the appeal bond ran, so he contends, investigated the matter and found the memorandum as they claimed to be untrue, and thereupon made a complaint before the grand jury against him and he was indicted for the crime of perjury. On the trial of that indictment he was immediately acquitted and thereupon brought this suit against McPhee for damages for what he alleged was a malicious prosecution.
There are a good many questions presented on this appeal which have basis and about which the trial court undoubtedly *41 committed errors as we look at the record. We do not however expect to go through the record and discuss them, nor pay any attention whatever to various points urged by counsel for appellant, because the whole matter is determined by another consideration which entirely disposes of the case and relieves us of the necessity to consider them. No matter how many errors may have been committed by the court in the progress of the trial, if'the plaintiff failed to prove a fact fundamental and essential to the maintenance of his suit, he cannot have the case reversed because of them. There seems to have been a misconception respecting the memorandum signed by K.lug underneath the justification. That memorandum was no part or parcel of the justification, and whether true or false did not render Klug liable either to a prosecution in a criminal proceeding or to a civil suit, unless on some basis of misrepresentation which is not exhibited. Under our statute parties have the right to appeal; the only limitation is that they must give an undertaking in double the amount of the judgment, with sureties to be approved by the clerk. The statute regulating appeals makes no provision for justification, but simply requires the clerk to satisfy himself as to the sufficiency of the bondsmen. There is, however, a general statute respecting undertakings requiring the person taking them to use diligence in ascertaining the responsibility of the sureties, and requiring him to cause the sureties to make an affidavit that he or they are worth the sum specified in the Undertaking over and above their just debts and liabilities. The clerk complied with that statute and Klug signed the undertaking and made the proper affidavit. The memorandum below is simply a memorandum for the advice and advantage of the clerk, and to show that that officer had taken due precaution to make inquiries. ■ If the memorandum itself is not a part of the justification, whether true or false, it would not subject the surety to any prosecution for perjury; neither is it a part of the affidavit, nor was it made as such. On the trial of the present suit there seems to have been an attempt *42 on the part of the court, as well as on the part of counsel for the appellee to confine the proof to a support of this memorandum and to an attempt to show its truthfulness. In this respect both the court and counsel were in error because that was not the gravamen of the suit, nor did it make any difference for the purposes of this action whether or not Klug could uphold and show the absolute truthfulness of that memorandum. To maintain the present case all Klug had to do was to show that his justification was true; that he was worth |20,000 over and above all his just debts and liabilities, and then show that the prosecution was without probable cause with or without direct proof of malice as the case might be, and that the prosecution was instigated by McPhee without the justification which the law requires him to show as a defense. This erroneous theory regarding the case occasioned as we have already suggested the commission of a good many errors. A good deal of proof was rejected which ought to have been admitted, a good many questions excluded which should have been answered, but regardless of those matters the plaintiff failed to prove one fundamental fact, and failing in this respect he cannot complain because of these incidental errors nor ask the reversal' of the case. It has been several times decided both by the supreme court and this, that the plaintiff is bound to make proof or offer proof of the fundamental facts essential to maintain his cause of action, and failing in this he cannot successfully assign error on some ruling of the court, excluding other proof which might, this being done, be rendered admissible; in other words, having offered testimony which the court has refused, he cannot rest on that proposition though it shows error, and failing to make or offer the proof necessary to the suit rest, have the judgment go against him and then appeal. The failure of the plaintiff’s proof was with respect to McPhee’s connection with the prosecution. The plaintiff did not show that McPhee instituted the prosecution, that he fathered it, that he caused it to be commenced, or that without him the indictment would not have been *43 found. It is quite true McPhee appeared on the back of the indictment as the prosecuting witness. This, however, is no proof of his connection with it because that simply shows that he is the person whose rights have been perhaps affected, and perhaps the one who furnished the principal proof on which the prosecution rests. It in no manner shows that he went before the grand jury voluntarily and gave the evidence and started the prosecution. He may have been called there by subpoena issued by the prosecuting officer or by the grand jury itself, who may by some one else have been advised of the commission of the alleged crime. It is quite true there is a statute which provides for the indorsement of the name of the prosecuting witness on an indictment for a crime committed against the property or person of an individual, and which under some .circumstances will subject the prosecuting witness to the payment of costs. This however is not that sort of a case. This prosecution was not instituted because of injury to the personal property of McPhee, but it was instituted to punish a crime against the statutory law regarding perjury which is not a crime against the person or property to which the statute would be applicable. This disposes of that contention and the effect of the indorsement, and as has been said by a writer on the subject there must be some evidence of the identity of the defendant and that he was a prosecutor in proceedings which are charged to be malicious. Newell on Malicious Prosecution, chap. 13, § 3, p. 451. It is quite evident this must be the law regardless of authority, and wherever one would seek to recover damages for malicious prosecution in a case where an indictment has been found and the accused tried and acquitted, he must produce evidence connecting the person charged with the' institution of the proceedings. It is very different in cases of an indictment against a person for the violation of a general law and the case of an indictment against the person for the commission of a crime against some individual, or for a wrong done against the property of some individual, and also in a case where the prosecution is initiated by a *44 complaint filed before a justice of the peace or some other peace officer, based on an affidavit signed by one who complains. At all events in the present suit we are unable, although we have read the abstract and supplemental abstract with great care, to find therein any evidence which is sufficient to so connect McPhee with the prosecution as under any circumstances or any condition of the proof to render him liable in damages for the wrong which was apparently done Klug.
This being true the judgment of nonsuit which was entered in the court below on this proof was manifestly right, and it must necessarily be affirmed.'

Affirmed.